LEMUEL ORCUTT, *ex dem.* JOSHUA WARNER,
*against*
JONATHAN CARPENTER, Tenant.

If a petit juror is qualified by being a freeholder when put into the town jury-box, his divesting himself of his freehold before drawn and summoned cannot be taken advantage of after verdict, but should have been objected in challenge.

MOTION for new trial. Verdict for defendant in ejectment.

And now, after verdict, and before judgment had and rendered thereon, the plaintiff in said action comes and moves the Court here, that the verdict given upon the trial of said cause may be set aside, and that no judgment may be rendered thereon. Because he says,

That one of the jurors of the panel who tried said cause, at the time of trial and giving in said verdict, *was not a freeholder* in said County of *Orange,* as by law he ought to have been.

Also, for that some juror or jurors of the panel who tried said cause and gave their verdict therein, after the said cause was by the Court delivered to the said Jury in charge to try the issue thereof, and before said verdict was delivered into Court, did converse and speak with others not of the panel aforesaid, of and concerning said cause, and did enter into arguments and conversation with them upon the merits of said cause, how and in what manner the same ought to be determined, and how and in what way said verdict ought to go and be given.

Also for that some juror or jurors of the panel aforesaid, after said cause was given to the Jury in charge by the Court, did divulge, make known and publish said verdict to others not of the Jury, by means whereof said verdict was known to the defendant in said cause before the same was rendered in Court.

Wherefore it is ordered by the Court here, that the counsel for the defendant in said cause shew cause, if any they have, why said verdict should not be set aside, and a new trial granted.

By order of Court,
*Isaac Bailey,* Clerk.

*Jacob Smith,* for the plaintiff, in support of the motion, made two points:

Orcutt
v.
Carpenter.

*If a petit juror by any intimation discloses the event of the verdict before it is delivered in Court, it will be considered as a gross violation of his official oath, and the verdict on motion will be set aside.*

First. That one of the Jury, at the time of the trial and delivery of said verdict in Court, was not a free-holder within the County.

Secondly. That certain of the jurors divulged their verdict before it was delivered in Court.

As to the first point : It was conceded, that *Thomas D. Trussdate*, foreman of the Jury, was a free-holder within the County when his name was put into the jury-box in *Fairlee*, but not a freeholder when summoned, or at the time of the trial of the issue.

As to the second point : It appeared in evidence, that the Jury had retired for consultation to a private room in a public house ; that after they had agreed upon and sealed up their verdict, *Swazy*, one of the Jurors, as he was passing through the bar-room, was attentive to a conversation between the deponent and another person. Deponent observed, that he had bet a glass of bitters that the plaintiff would have a verdict in his favour. *Swazy* observed, You had better pay your bet.

*Pilsbury*, another witness, testified, that he had conversed with another of the jurors after they had agreed on their verdict, near the same place ; and though he could not particularize the conversation, he obtained sufficient information from the juror to convince him which way the Jury had determined the cause.

*Smith*. The qualifications of both petit jurors and talesmen are pointed out by the statute.

*Vermont Stat. vol. 1. p. 77.*

Section 58. of the judiciary act, directs, " that the clerks of the County Courts, and of the Supreme

Court of Judicature respectively, shall issue a *venire* directed to the sheriff of their respective Counties, or his deputy, commanding him to summon fifteen judicious men, *being freeholders within said County*, to serve as petit jurors in the Court mentioned in said *venire*."

Orcutt
v.
Carpenter.

Section 63. " That when it shall so happen that a sufficient number of jurors summoned as aforesaid do not appear, or if by reason of challenges or other causes there shall not be a sufficient number of jurors to make up the panel or panels, the Court shall order the sheriff or other officer to fill up such Jury or Juries by summoning, either with or without a precept, a sufficient number of judicious men, being freeholders of the vicinity."

*Vermont* Stat. vol. 1. p. 79.

Section 5. of the act regulating town meetings, &c. provides, " that the selectmen, constable or constables, town clerk, and such magistrates of the town who may be present, *(at such meeting,)* shall agree upon such number of *judicious and discreet freeholders, to serve as grand jurors and petit jurors*, as they shall judge will be the proportion of said town, to attend the Supreme Court of Judicature and County Courts, the year ensuing; which member shall be nominated by said authority, and chosen by the inhabitants present; and it is hereby made the duty of the town clerk to write the names of the persons so chosen on separate pieces, and put them into different boxes, to be kept in his office, provided at the expense of the town for that purpose.

Ib. p. 409.

By the same 63d section of the judiciary act it is provided, that the sheriff to whom the *venire* is directed " shall repair to the town clerk's office in every

such town, and in his presence, or, in case he shall be absent, in presence of one or more of the selectmen of such town, draw out of the box containing the names of the persons nominated by the authority of such town, to serve as petit jurors, the number his *venire* directs him to summon."

Here we see, that wherever the statute touches on the qualifications of petit jurors, it is made indispensable that they should be *freeholders*. The only question which the subtle ingenuity of our opponents can make on this point will be a mere question of time. Ought this disqualification in the foreman to have been taken advantage of in challenge, and is it too late to do it on the present motion after verdict?

We shall shew from the books, that exception to a juror for want of freehold is so radical that we can avail ourselves of it at any time, and that the more usual mode has been to except after verdict. *Barnes' Notes*, p. 453. *Norman* v. *Beaumont*, and p. 455. *Russell* v. *Ball.*

Our second point is so clear, that we shall be very brief in our remarks upon it. We shall merely read a section of the juror's oath: " Your own counsel and that of your fellows you will duly observe and keep : you will say nothing to any person of the business and matters you have in charge but to your fellow jurors, nor will you suffer any one to speak to you about the same but in Court; and when you have agreed on a verdict you will keep it secret until you deliver it in Court."

Whence the repeated injunction in this oath to preserve the consultations and verdict of the Jury an inviolable secret until published in open court, but

because the Legislature conceived that the most in-
jurious consequences to parties would flow from a
premature development of their proceedings? And
shall we be wiser than the law, and conclude, that.
what it has considered important is of no moment?

Where the law has prescribed a duty, especially
to officers of a court of justice, it is necessary to en-
force a rigid performance of it; for a small deviation
from a line of duty prescribed leads to a greater, and
so on until the law is done away. In the present in-
stance, let this Court sanction the *intimation* given by
the jurors of the result of their verdict, and future
jurors will proceed from intimations to consultations
with the parties, and bribery and corruption will
eventually ensue.

Though we do not read it as an authority, we shall
cite the opinion held on this subject in a respectable
neighbouring State. *Swift's System*, vol. 2. 252.

*Nathaniel Chipman*, against the motion.

As to the first point, it stands upon the statement
the juror was a freeholder in *Fairlee* at the time his
name was put into the jury-box by the town clerk,
but when summoned and sworn as a juror, not a free-
holder.

The statute requires jurors to be freeholders, and
that the town clerk shall put the names of such elect-
ed by the town upon the nomination of the authority
into the box. Here all that was required of the town
or town clerk was done; and the question is, whether
what was after done disqualified the juror. This
must depend on the strict provision of the law. Cer-
tainly the juror, by losing his estate, did not lose his

judgment. Had the town clerk any exercise of judg-ment in this case? Could he have taken the juror's name from the box after he had divested himself of his estate? Suppose the town clerk in this case might be mistaken, would not the very exercise of his judg-ment go to the packing of jurors. Should not this judgment rather be exercised by the Court? At what time should the Court exercise this judgment? Sure-ly it would be dangerous to do it after verdict; and though true it is the party might not know that the juror had thus divested himself of his freehold, he might be induced, from his interest in the cause, to make inquiry, and upon such disqualification being discovered, would prefer his exception at the time allowed for challenge.

Here is no corruption in the juror; nothing at-tempted to be shewn, that the verdict of the Jury would have been different if the supposed disqualified juror had not been on the panel.

The cases cited from *Barnes's Notes* do not apply.

In the case of *Norman* and *Beaumont*, a person an-swered to a wrong name, and was not *originally re-turned*. So in the other case of *Russell* v. *Ball*, the son answered for the father, and was not *originally* a juryman.

The principle is, that where a person comes on the Jury surreptitiously, and is not of the original panel, he shall be set aside. But in this instance, he, the very man, was put into the box by the town, drawn by the clerk, summoned by the sheriff, and sworn in Court. Here was no surreptitious conduct. If a per-son put into the box should be indicted, convicted and punished for an infamous crime, and then drawn,

summoned and sworn here, would be a moral disqua-
lification, and undoubtedly advantage would be taken
of it; but in this case there is no turpitude.

The depositions read in support of the second
point do not go to shew any divulging of the verdict.

*Pilsbury* deposes as to a conversation which he
cannot detail, but whence he guessed a conclusion
that the verdict was for the defendant; and so of the
bet of a glass of bitters. Could this have any effect
upon a verdict already sealed up? If so, it must be
from the jurors discovering by their conduct such
partiality as had heretofore disqualified them from
sitting in the cause, or that it would disqualify them
from sitting if the Court should have sent them to a
reconsideration, which cannot be pretended.

*Daniel Buck*, in support of the motion.

If trial by Jury is a common law right, regulated
by statute both in *Great-Britain* and here, the reason-
ings upon the subject which operate there will apply
here with equal force. The cases in *Barnes's Notes*,
though they exhibit instances of persons sitting on
Juries, who were not originally in the *venire*, yet the
reasonings on those cases go to shew, that the objec-
tion there prevalent would have equally applied to
those jurors returned on the *venire*.

It is here stated, that at the time of the trial one of
the panel had not the requisite qualifications of a ju-
ror: consequently there were but eleven jurors who
returned the verdict into Court. It is certainly not
only necessary that the juror should be a freeholder
at the time of being put into the box, but at the time
of trial. This appears from the statute requiring that

33

the *tales* should be likewise *freeholders*.   We consi-
der a legal to be as fatal as a moral disqualification.

The second exception in the points made goes
to shew, that certain of the jurors violated the obli-
gation of their oath.   The only security of parties
provided by the law, is the oath administered to ju-
rors.   If the jurors violate their oath, it shews that
they have not been proper persons to try the cause.
The point of divulging the verdict has been fully
proved.   The jurors, though they had agreed upon
and sealed their verdict, had the cause under their
control until they delivered it in Court.   To the in-
quiry of the Clerk, Is this your verdict, or have you
agreed upon a verdict? any one of the jurors might.
have dissented.   Their divulging the verdict exposed
them to the solicitations if not to the bribes of the
losing party, and thus the argument derived from
their having sealed their verdict fails.

### Judgment of the Court.

The Chief Judge delivered the opinion of the.,
Court.

On the first point, the Court consider, that the
juror being legally qualified when put into the box,
his subsequent disqualification by divesting himself
of his freehold, and thus not being a freeholder when
drawn, summoned and sworn, should have been
taken advantage of in challenge, and cannot prevail
after verdict.

But upon the second point, the premature disclo-
sure of the verdict by some of the jurors was a gross
violation of their oath, which is the principal security

the parties have for the rectitude of their conduct, and ought ever to operate as a prevalent cause for setting aside a verdict given under such circumstances.

*Orcutt*
*v.*
*Carpenter.*

Therefore a new trial is granted.

*Daniel Buck* and *Jacob Smith*, for plaintiff.
*Nathaniel Chipman*, for defendant.