BERNICE BELL *vs.* DORCHESTER THEATRE COMPANY.

Suffolk. October 9, 1940. — January 11, 1941.

Present: FIELD, C.J., DONAHUE, DOLAN, COX, & RONAN, JJ.

*Negligence,* Theatre. *Practice, Civil,* Requests, rulings and instructions, Charge to jury.

Upon a defendant in an action of tort making a request sufficient to call for an instruction as to the rule governing his liability, he is entitled to have that rule stated even though the request is not strictly accurate in the general form in which it is presented.

At the trial of an action against the proprietor of a theatre for injuries sustained by a patron when a seat broke, where the evidence presented the issue whether a defective condition of iron supports of the seat should have been discovered by the defendant in the exercise of reasonable care, the judge erred in giving only general instructions as to the defendant's duty in the circumstances, when by a request of the defendant a specific ruling was sought to the effect that the defendant should not be found liable unless in the exercise of due care and diligence he "would or could" have discovered the defective condition.

TORT. Writ in the Superior Court dated February 5, 1936.

The case was tried before *Swift*, J., and a verdict was returned for the plaintiff in the sum of $2,500.

*E. C. Park*, (*J. A. A. Anctil* with him,) for the defendant.
*H. F. Tracy*, (*F. D. Branca* with him,) for the plaintiff.

Cox, J.    This is an action of tort to recover damages for personal injuries alleged to have been sustained by the plaintiff on December 21, 1935, when she was a patron in the defendant's theatre.    There was a verdict for the plaintiff.    The exceptions of the defendant are to the alleged refusal of the trial judge to give some of its requests for rulings.

The jury could have found that the plaintiff was rightfully in the defendant's theatre as a patron, occupying the seat that had been assigned to her by an usher; that as she was changing or moving her position in the seat, the back of the seat broke and fell behind her "in one piece" to the floor; and that she was injured.    The back, which was of wood, had two claw-like iron braces extending from the frame that holds the rest of the seat.    The break, which was in the iron and below the arms of the seat, was "rusty and old and dirty."    The iron piece in question "snapped right off, broke right off."    "It was gray where it was broken, except where it looked as if there was another break there," and the dust, dirt or rust "was right where it broke."    It could have been found that both braces were broken.    There was evidence that the seat was "relatively" new in 1924, that the break in the iron was fresh and clean, and that there was no flaw anywhere in the fracture.

Three of the defendant's requests for rulings are based upon the theory that the seat was broken as the result of the wrongful act of either the plaintiff or someone for whose conduct the defendant was not responsible.    But there was no direct evidence that any such conduct caused the seat to break, and we are of opinion that the jury would not have been warranted in drawing any inferences to that effect.    At best the evidence went no farther than that in the immediate vicinity of the place where the plaintiff was seated there was some disturbance, there was mumbling and laughing, and some of the young people were "fooling";

that there were two young men in back of the plaintiff who
were leaning forward and talking to her, but that they were
quiet "about it"; and that the plaintiff had admitted that
some boy seated behind her was teasing her. The assistant
manager, who testified to the alleged disturbance, could not
say that "he saw them personally making a disturbance."
Upon this record there was no error in the denial of these
requests. This is equally true of the refusal to give the
twenty-second request, which was based upon the assump-
tion that the jury could find that the break could have been
brought about "by some mischievous third person."

The defendant contends that the remaining requests,
which were denied, called for an instruction in some form
of words that the defendant was not liable for hidden de-
fects in the seat "if the defendant neither knew nor could
in the exercise of due care have discovered their exist-
ence." The judge, in his instructions to the jury, nowhere
made specific reference to the defect which could have been
found to have existed, unless it was in his statement that
"It is the duty of a defendant operating a theatre, as this
defendant was, to furnish seats for persons permitted to
occupy them, which seats were reasonably safe; and his
failure to do so would constitute actionable negligence, if
by reason of these unsafe or defective conditions patrons
were injured." The jury were told that the burden was on
the plaintiff to prove by a fair preponderance of the evi-
dence that the defendant was negligent; that it was not
an insurer of the safety of its patrons, but that it was its
duty to use ordinary care and diligence to maintain the
theatre, its seats and equipment, in a reasonably safe con-
dition, and that if it was aware of any dangers, it had a
duty to warn the plaintiff; that it was not obliged to fore-
see all possible injury that might result to a patron; that
the test is, has it used "reasonable prudent care, ordinarily
reasonable prudent care for the safety of the patrons"; and
that its duty was to furnish seats that were reasonably
safe. Again the jury were told that "Those seats must
be reasonably safe, and that obligation is on the defendant
to furnish reasonably safe seats. If they fail to do it, it is

negligence. If they do furnish reasonably safe seats, then they have met the obligation . . ."; and that the jury would have to determine whether the defendant "measured up to the degree of care the law imposes on him, and furnished the ordinary, reasonable, prudent care in the conduct of its business, and in the furnishing of its equipment . . . ."

After a conference at the bench, the following additional instructions were given: (1) "if, without action for which it, the defendant, is responsible, a dangerous condition arises, the law holds the defendant responsible for the outcome only if he should fail to take measures to remedy it. It is not liable in such case unless it is negligent in failing with respect to taking the proper action." (2) "It comes down to the basic principle, what did the defendant do by way of providing an ordinarily safe place for its patrons . . . of which the plaintiff was one; what is the ordinary care that has been given by the defendant is for you to determine on the evidence." The first part, (1), of these instructions appears to have been based upon the defendant's eighth request, which had been refused: "If without action for which it, the defendant, is responsible a dangerous condition arises the law allows a defendant a reasonable opportunity to become informed of the danger and to take measures to remedy it, it is not liable in such cases unless it is negligent in failing to inform itself and to take appropriate action." It is to be observed, however, that all reference was omitted to that part of the request that "the law allows a defendant a reasonable opportunity to become informed of the danger," and that it is not liable "unless it is negligent in failing to inform itself."

This request, which was refused as a whole, appears to have been taken verbatim from statements in *Keenan* v. *E. M. Loew's, Inc.* 302 Mass. 309, 311, 312, (see *White* v. *Mugar*, 280 Mass. 73, 75) which are preceded by the following (pages 311–312): "It was the duty of the defendant, as far as reasonably practicable, to maintain its seat in a reasonably safe condition for the use of the plaintiff. . . . But it was its duty to use reasonable care to discover a

concealed danger, if the danger in this case were concealed." And it was also said (pages 312–313) that a finding was justified, in effect, that the condition (in the case under consideration) was not transitory or of recent origin, and that it was for the jury to determine whether a reasonably diligent proprietor of a theatre should have known of the existence of the defective condition. Among the requests now under consideration are two that, in substance, called for instructions that before the plaintiff could recover for an allegedly defective condition, the jury must first find that the defendant knew of it or that, in the exercise of due care and diligence, it "could" have been found, and that before the defendant could be charged with constructive notice, the jury must find that there was a prior or preëxisting defective condition which had continued long enough so that the defendant, in the exercise of due care and diligence, "would or could" have found it, but failed to do so.

The plaintiff contends that these last two requests ought not to have been given for the reason that the duty of a defendant in such a case does not depend on what it could or would have discovered, but rather upon what it should have discovered. See *Spicer* v. *South Boston Iron Co.* 138 Mass. 426, 430; *Parsons* v. *Hecla Iron Works*, 186 Mass. 221, 224, 226; *Finnegan* v. *Winslow Skate Manuf. Co.* 189 Mass. 580, 582; *Saxe* v. *Walworth Manuf. Co.* 191 Mass. 338, 340; *Ryan* v. *Fall River Iron Works Co.* 200 Mass. 188, 191; *Young* v. *Snell*, 200 Mass. 242, 246; *Green* v. *Nightingale*, 211 Mass. 273, 276; *Barber* v. *C. W. H. Moulton Ladder Co.* 231 Mass. 507, 511; *Downing* v. *Jordan Marsh Co.* 234 Mass. 159, 160; *Walker* v. *Benz Kid Co.* 279 Mass. 533, 535; *Brogna* v. *Capodilupo*, 279 Mass. 586, 592, 593; *Denny* v. *Riverbank Court Hotel Co.* 282 Mass. 176, 181; *Kelley* v. *Goldberg*, 288 Mass. 79, 81; *Palmer* v. *Boston Penny Savings Bank*, 301 Mass. 540, 542; *Sheridan* v. *Boston & Albany Railroad*, 253 Mass. 446, 450.

The plaintiff offered no evidence as to the condition of the iron that broke except as it might have been inferred from the appearance of the break itself. But the defendant

introduced evidence through an expert from which it could have been found that there was no chill on the outside of the iron, tending to show its weakness, if there were any, and nothing about the outward or exterior surface of the iron which would indicate any flaw "from the inside." It was, therefore, an issue in the case whether the condition of the iron, as testified to by the plaintiff, should have been discovered by the exercise of reasonable care.

As no exceptions were taken to any part of the charge we are concerned only with the manner in which the judge dealt with the defendant's requests. See *Commonwealth* v. *Meserve*, 154 Mass. 64, 75; *Galligan* v. *Old Colony Street Railway*, 182 Mass. 211, 213; *Berry* v. *New York Central & Hudson River Railroad*, 202 Mass. 197, 204; *Ahern* v. *Boston Elevated Railway*, 210 Mass. 506, 510; *Hebbard* v. *McDonough*, 245 Mass. 204, 212. It is a general rule that a party may well assume that, without special request therefor, the judge will properly instruct the jury on the leading points of the case, *Brick* v. *Bosworth*, 162 Mass. 334, 338. But if no requests for instructions have been made before the closing arguments (see Rule 71 of the Superior Court [1932]) it is the duty of counsel to call the attention of the judge to any inaccuracy or omission. See *Commonwealth* v. *Enwright*, 259 Mass. 152, 158, 159, and cases cited; *Hughes* v. *Whiting*, 276 Mass. 76, 79. Where, however, a request is sufficient to call for an instruction as to the rule of responsibility by which a defendant is bound, he is entitled to have the rule of law stated, *Cork* v. *Blossom*, 162 Mass. 330, 334, and this is true even though the request is not strictly accurate in the general form in which it is presented. *Bergeron* v. *Forest*, 233 Mass. 392, 402. See *Roche* v. *Gryzmish*, 277 Mass. 575, 580; *Adamaitis* v. *Metropolitan Life Ins. Co.* 295 Mass. 215, 220, 221.

Where, as here, the burden was on the plaintiff to show that she was injured by reason of a defect for which the defendant was responsible, some instruction could reasonably be expected as to the duty of the defendant beyond the general statements that were made by the judge in the first part of his charge. If it be assumed that the use of

the words "could" and "would" were not apt, nevertheless the requests served to call the judge's attention to an issue that should have been covered. It is not unreasonable to assume from the language of the first part of the additional instruction that, at the conference at the bench, the eighth request was under discussion as very likely were the other requests to which reference has been made. We are of opinion that the charge, even with the additional instructions, did not sufficiently state the law as to the issue to which the judge's attention had been called, either at the conference at the bench or by the requests which, subject to the defendant's exceptions, he had declined to give.

In the circumstances, it cannot be said that the defendant was not harmed. See *Commonwealth* v. *Meserve*, 154 Mass. 64, 75; *Mahoney* v. *Boston Elevated Railway*, 271 Mass. 274, 280; *Shannon* v. *Ramsey*, 288 Mass. 543, 550.

*Exceptions sustained.*